TEACHERS' RETIREMENT SYSTEM OF LOUISIANA and City of New Orleans Employees' Retirement System, derivatively on behalf of nominal defendant American International Group, Inc., Plaintiffs Below, Appellants,

v.

PRICEWATERHOUSECOOPERS LLP, Defendant Below, Appellee.

No. 454, 2009.

Supreme Court of Delaware.

Submitted: Feb. 24, 2010.

Decided: March 3, 2010.

Stuart M. Grant, Esquire (argued), Megan D. McIntyre, Esquire, John C. Kairis, Esquire, and Catherine Pratsinakis, Esquire, Grant & Eisenhofer, P.A., Wilmington, DE, and Daniel W. Krasner, Esquire, Peter C. Harrar, Esquire and Stacey T. Kelly, Esquire, Wolf, Haldenstein, Adler, Freeman & Herz, LLP, New York City, for appellants.

Henry E. Gallagher, Jr., Esquire and Ryan P. Newell, Esquire, Connolly, Bove, Lodge & Hutz, LLP, Wilmington, DE, and Thomas G. Rafferty, Esquire (argued), Antony L. Ryan, Esquire and Samira Shah, Esquire, Cravath, Swaine & Moore, LLP, New York City, for appellee.

Before HOLLAND, BERGER and JACOBS, Justices.

HOLLAND, Justice:

This Court has before it an appeal from the Court of Chancery following the dismissal of shareholder derivative claims against PricewaterhouseCoopers LLP ("PwC"). The plaintiffs ("Derivative Plaintiffs") allege a series of frauds at American International Group, Inc. ("AIG"). The Court of Chancery held that the misconduct of AIG's senior officers, as alleged in the amended complaint (the "Complaint"), is imputed to AIG and bars Derivative Plaintiffs' claims on behalf of AIG against PwC as a matter of New York law.

Section 500.27 of the New York Rules of Court authorizes certification of cases to the New York Court of Appeals "[w]henever it appears to ... a court of last resort of any other state that determinative questions of New York law are involved in a case pending before that court for which no controlling precedent of the Court of Appeals exists...."[1] We have concluded that a resolution of this appeal depends on significant and unsettled questions of New York law that are properly answered, in the first instance, by the New York Court of Appeals.

The Complaint in this action in the Court of Chancery alleges that AIG's senior officers orchestrated a variety of frauds while working at AIG. Some had to do with AIG's accounting, while others, such as bid-rigging with other insurers, were unrelated. The common theory of the Derivative Plaintiffs' Complaint, is that former AIG officers are primarily responsible. Derivative Plaintiffs' claims against these former AIG officers were not dismissed, remain pending in the Court of Chancery, and are not at issue in this appeal.

1. N.Y. Comp.Codes R. & Regs. tit. 22, § 500.27(a) (2010).

### Factual Summary

The complete facts are set forth in the Court of Chancery's opinion.[2] In that opinion, the operative facts were summarized as follows:

In the derivative portion of this action, stockholder plaintiffs (the "Stockholder Plaintiffs") seek to recover funds to make American International Group, Inc. whole for harm it suffered when it was revealed that the corporation's financial statements were materially misleading and overstated the value of the corporation by billions of dollars. According to the Stockholder Plaintiffs, the false financial statements did not come about inadvertently, but were the consequence of intentional misconduct by AIG's top managers.

Indeed, it does not overstate things to say that the Stockholder Plaintiffs allege that AIG embarked on widespread illegal misconduct at the direction and under the control of the Chairman of its board of directors and Chief Executive Officer, defendant Maurice R. Greenberg. According to the Stockholder Plaintiffs, Greenberg and a core "Inner Circle" directly oversaw all aspects of AIG's business and kept a close watch on their subordinates. Greenberg's Inner Circle was comprised of a small group of long-time AIG executives who Greenberg rewarded with very lucrative compensation packages. These executives oversaw almost all of AIG, including the parts that are implicated in the misconduct alleged by the Stockholder Plaintiffs. Among this Inner Circle were three defendants who feature prominently in this case: Howard I Smith, who was an AIG director and its Chief Financial Officer; Edward E. Matthews, who served on AIG's board for almost thirty years and was Vice Chairman of Investments and Financial Services; and Thomas R. Tizzio, who was a director, Senior Vice Chairman of General Insurance, and a member of AIG's reinsurance security committee (together with Smith and Matthews, the "Inner Circle Defendants").

Most of the wrongdoing alleged in the First Amended Combined Complaint (the "Complaint") involved action by AIG insiders to misstate AIG's financial performance in order to deceive investors into believing that AIG was more prosperous and secure than it really was. The single largest act of deception alleged involved a fraudulent $500 million reinsurance transaction in which various AIG insiders stated an elaborate artificial transaction with defendant Gen Re Corporation. Although AIG portrayed the transaction as providing Gen Re with reinsurance, in reality the transaction had no substance and was simply staged to make AIG's balance sheet look better. In other instances, AIG insiders allegedly used secret offshore subsidiaries to mask AIG losses, blatantly misstated accounts with no basis for their adjustments, failed to correct well-documented accounting problems in an AIG subsidiary, and his AIG's involvement in controversial insurance policies that involved betting on when elderly people would die.

But, the complaint alleges, Greenberg and his Inner Circle were not content with merely hiding AIG's financial performance. Various insiders at AIG also caused the corporation to engage in schemes to avoid taxes by falsely claiming that workers' compensation policies were other types of insurance and by engaging in "covered calls" to recognize

---

**2.** *American Int'l Group, Inc. v. Greenberg*, 965 A.2d 763, 774–75 (Del.Ch.2009).

investment gains without paying capital gains taxes.

Similarly, various insiders allegedly involved AIG in conspiracies with other companies to rig markets. In both the municipal derivative and general insurance markets, AIG supposedly conspired with competitors and others to subvert supposedly competitive auctions by secretly pre-selecting the winners.

Finally, the Stockholder Plaintiffs allege that Greenberg and other defendants exploited their own familiarity with improper financial machinations by causing AIG to sell its "expertise" in balance sheet manipulation. AIG sold insurance policies that did not involve the actual transfer of insurable risk to other companies with the improper purpose of helping those companies report better financial results. AIG also created special purpose entities for other companies without observing the required accounting rules for the similarly improper purpose of helping those companies hide impaired assets that they did not want on their balance sheets.

Eventually, all of these schemes were uncovered. As a result, AIG suffered serious harm. The corporation was forced to restate years of financial statements, eventually reducing stockholder equity by $3.5 billion. And, AIG still faces litigation and regulatory proceedings on a number of fronts, an ongoing process that has already required the corporation to pay over $1.6 billion in fines and other costs necessary to resolve proceedings against it.

### Allegations Against PwC

Derivative Plaintiffs do not allege that PwC conspired with AIG, or agents of AIG, to commit accounting fraud. Instead, Derivative Plaintiffs allege that, as AIG's independent auditor, PwC failed to perform its auditing responsibilities in accordance with professional standards of conduct (negligence), and thus failed to detect or report the fraud perpetrated by AIG's senior officers.

### Decision at Issue

The Court of Chancery held that the claims against PwC were governed by New York law, and that based on the allegations of the Complaint, AIG's senior officers did not "totally abandon[ ]" AIG's interests—as would be required under New York law to establish the "adverse interest" exception to imputation. Accordingly, the Court of Chancery held that the wrongdoing of AIG's senior officers is imputed to AIG.[3] The Court of Chancery concluded that, once the wrongdoing was imputed to AIG, AIG's claims against PwC were barred by New York's *in pari delicto* doctrine and by the related *Wagoner* line of standing cases in the United States Court of Appeals for the Second Circuit.[4]

### Certified Questions

This Court hereby certifies the following question to the New York Court of Appeals:

> Would the doctrine of *in pari delicto* bar a derivative claim under New York law where a corporation sues its outside auditor for professional malpractice or negligence based on the auditor's failure to detect fraud committed by the corporation; and, the outside auditor did not knowingly participate in the corporation's fraud, but instead, failed to satisfy

---

**3.** *American Int'l Group, Inc. v. Greenberg*, 965 A.2d 763, 817–22, 826–27 (Del.Ch.2009).

**4.** *Id.* at 822–30 (discussing *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114 (2d Cir.1991)).

professional standards in its audits of the corporation's financial statements?[5]

We direct the Clerk of this Court to send this opinion to the Clerk of the New York Court of Appeals, as our certificate, together with the parties' briefs and appendices. We will take no further action in this appeal until after the New York Court of Appeals acts on this certification request.

5. We are aware that the New York Court of Appeals has accepted related questions from the United States Court of Appeals for the Second Circuit. *Kirschner v. KPMG, LLP*, 590 F.3d 186 (2d Cir.2009), certified question accepted by *Kirschner v. KPMG, LLP*, 13 N.Y.3d 933, 895 N.Y.S.2d 309, 922 N.E.2d 898 (2010).